IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ESTATE OF ROBERT S. BOWEN          *

            Plaintiff          *

           vs.          *    CIVIL ACTION NO. MJG-11-2231

UNITED STATES OF AMERICA          *

           Defendant          *

*          *          *          *          *          *          *          *          *

<u>MEMORANDUM AND ORDER</u>

The Court has before it the United States' Motion for Summary Judgment [Document 8], Plaintiff's Motion for Summary Judgment [Document 15] and the materials submitted relating thereto.  The Court has held a hearing and had the benefit of the arguments of counsel.


I.   <u>BACKGROUND</u>

In 2006, Robert S. Bowen ("Bowen") was a resident of Annapolis, Maryland who, after his retirement, engaged in various business enterprises.  Bowen died in November, 2009.

The instant case relates to a yacht ("the Boat") that Bowen bought in 2006.  Bowen's Estate ("Plaintiff") claims that Bowen paid almost $750,000 for the Boat and expended over $1,000,000 to repair defects.  The Boat was sold by the Estate for $350,000 in 2010.

Plaintiff seeks a refund of federal income taxes paid by Bowen for the year 2006, contending that he did not claim certain deductions to which he was entitled in regard to the Boat.  The Government contends that Bowen did not have a right to any such deductions on the 2006 federal income tax return.


II.  <u>SUMMARY JUDGMENT STANDARD</u>

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).

The well-established principles pertinent to such motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to the motion for summary judgment through the non-movant's rose colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  <u>See, e.g.</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Adickes v. S.H. Kress & Co.</u>,

398 U.S. 144, 158-59 (1970); <u>Shealy v. Winston</u>, 929 F.2d 1009, 1012 (4th Cir. 1991).

III. <u>DISCUSSION</u>

As discussed herein, Plaintiff seeks a recovery based upon a variety of theories.  The parties certainly disagree as to whether Mr. Bowen was engaged in a business or hobby vis-à-vis the boat and other intent issues.  However, it is not necessary to determine whether Plaintiff has presented sufficient evidence to avoid summary judgment in regard to such matters.  Rather, as discussed herein, even accepting Plaintiff's position on all such issues, the Government is entitled to summary judgment.

A.   <u>The Boat Transactions</u>

In 2006, Bowen ordered[1] a 65-foot yacht to be built by a Chinese boat-building company.  The Boat, for which Bowen paid some $750,000, was manufactured in 2006 and shipped by freighter from China in November 2006.  The Boat arrived in North Carolina on or about December 28, 2006.  The Boat was inspected in North Carolina in early January 2007.  Substantial problems were found, but Bowen was able to sail the Boat to Annapolis.

---

[1] Through a holding company.

Bowen made claims against the Chinese company for manufacturing defects and against an insurer for damage occurring during shipment. Bowen eventually settled his claims against the insurer for $120,000 in 2009.  Bowen was not able to obtain any recovery from the manufacturer.

From 2007 through 2009, Bowen paid substantial amounts for repairs to the Boat.  In June 2010, Bowen's Estate sold the Boat for $350,000.

B.   The Nature of This Tax Refund Suit

Plaintiff has properly filed this tax refund suit. Plaintiff, by Bowen while alive, met the jurisdictional prerequisite of full payment[2] of the amount shown due on his 2006 federal income tax return.  Plaintiff timely filed a claim for refund on Form 1040-X (Amended Return) stating the grounds upon which the refund is claimed on or about October 13, 2010.  The Estate timely filed the instant lawsuit on August 11, 2011.

A timely claim for refund is a jurisdictional prerequisite to a tax refund suit.  § 1314(b).[3]  Consequently, in a tax refund suit, the plaintiff's grounds for recovery are limited to those grounds set forth in the claim for refund on which the suit is

---

[2] Flora v. United States, 362 U.S. 145 (1960).
[3] All § references herein are to the Internal Revenue Code, Title 26 of the United States Code, unless otherwise stated.

based.  United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269,
272 (1931).  The statement of grounds in a claim for refund must
state "in detail each ground upon which a credit or refund is
claimed and facts sufficient to apprise the Commissioner of the
exact basis thereof." 26 C.F.R. § 301.6402-2(b). Thus, the claim
must contain "sufficient information to allow the Commissioner
to address the merits of the dispute." Beckwith Realty, Inc. v.
United States, 896 F.2d 860, 863 (4th Cir. 1990).  The Service
should not need to "hazard a guess" as to the amount or reason
that the taxpayer was seeking a refund. Id. at 862.

    The claim for refund on which Plaintiff bases the instant
case is little more than a "hodge-podge" with a listing of
Internal Revenue Code[4] Sections that, for the most part, have no
conceivable materiality.  Moreover, Plaintiff adds to each
identification of specific Code sections, the ineffectual mantra
"or any other applicable provision of the IRC." See IA 80 Group,
Inc. v. United States, 347 F.3d 1067, 1075 n.9 (8th Cir.
2003)("A general objection and demand for refund would in fact
encompass all conceivable grounds for a refund, but the IRS is
not required to ferret out on its own the specific claims
advanced by the taxpayer.")

_____

[4] References herein to "Code" are to the Internal Revenue Code,
Title 26, United States Code.

The Court will address each ground for recovery stated in Plaintiff's claim for refund.  In so doing, the Court will determine only whether there is a basis for recovery of an overpayment of Bowen's 2006 federal income tax liability by virtue of a ground stated in the claim for refund at issue.  The Court is not addressing whether there could be some basis for recovery of an overpayment of Bowen's federal income tax liability for some other year or on a ground that might have been set forth in some other claim for refund.

C.   Asserted Grounds For Recovery

    1.   "Damaged Inventory"

The claim for refund states:

> The taxpayer is deceased; and, additional information has come to light to amend the 2006 tax return as originally filed to include a deduction for a business loss.

> So this return amends the 2006 original return by including a deduction [for] 2006 for a business loss for damaged inventory. The deduction was erroneously omitted from and not previously taken on the 2006 Income Tax Return as originally filed.

As discussed at the hearing on the instant motions, the claim for "damaged inventory" is a claim that the Boat constituted inventory of Bowen's boat business that became worthless at the end of the year 2006.  Hence, it is claimed,

Bowen would have been entitled to a 2006 deduction by virtue of marking down its inventory from the cost of the Boat to its end of year fair market value.  Thus, Plaintiff claims that Bowen was entitled to a cost of goods sold deduction on his Schedule C because his end of year inventory was worthless.

The Court will assume, but by no means finds, that Plaintiff has submitted evidence sufficient to prove that Bowen was engaged in a business cognizable for income tax purposes and that the Boat could properly be considered to be inventory of that business.  Nevertheless, the Government is entitled to summary judgment with regard to the "damaged inventory" loss claim.

First, and conclusively, Plaintiff manifestly has not presented evidence sufficient to prove that the value of the Boat was zero at the end of 2006.  Plaintiff has presented no appraisal or other evidence sufficient to establish that the Boat had no value,[5] or what was the fair market value of the Boat as of the end of 2006.

Furthermore, the Amended Return that constitutes the claim for refund on which the suit is based includes an election that does not permit an inventory mark down deduction.  The alleged

---

[5] The Boat, with all of its problems, was sufficiently functional to sail, on its own, from North Carolina to Maryland in early 2007.

boat business is reported as "Ferro Yachts" on Schedule C.  Any inventory markdown deduction must be reported in connection with Part III, Cost of Goods Sold.  This section calls for the reporting of, among other things, "inventory at beginning of the year" (line 35), purchases (line 36) and "inventory at end of year" (line 41).

Plaintiff left blank the line for opening inventory which, as Plaintiff argues is correct in that there was no opening inventory.  Plaintiff left blank the line for closing inventory which, as Plaintiff argues, is correct if the closing inventory had no value.  Plaintiff also left blank the line for purchases which is not correct.  However, since there is an entry in the Other Expenses category for "Inventory Damage Loss" of $1,030,917 (an amount that includes, but is not limited to, what was actually paid for the Boat), the Court will assume that this could constitute substantial compliance with the need to report purchases.

However, Plaintiff did not leave blank the line requiring the statement of "Method(s) used to value closing inventory" (line 33).  On this line, Plaintiff elected "Cost" and not "Lower of cost or market."  Therefore, the closing inventory had to be reported at cost.  Accordingly, even if Plaintiff had

established that the Boat had a year-end value lower than its cost, there would still be no "damaged inventory" deduction.

### 2.   "Stock in Trade"

The claim for refund states:

> Alternatively, if the expenditures may not be deducted in 2006 as a business loss for damaged inventory, then
>
> the expenditures may be capitalized as:
>
> stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business and written down to lower of cost or market at year end . . .

To the extent that this can be comprehended, it appears to be duplicative of the "damaged inventory" ground.

Even if there could be some valid legal theory found in the foregoing verbiage, however, the theory would be based upon the contention that the Boat had a lower value than its cost as of the end of 2006.  Any such claim would fail due to the absence of proof of the end of year fair market value and also the election to value inventory at cost rather than the lower of cost or market.

3.   "Capitalization"

The claim for refund states:

> Alternatively, if the expenditures may not
> be deducted in 2006 as a business loss for
> damaged inventory, then

> the expenditures may be capitalized as:

> . . . .

> property, used in his trade or business, of
> a character which is subject to the
> allowance for depreciation provided in
> Internal Revenue Code Section(s) (hereafter
> "IRC") 167 and or IRC 1245 or real property
> used in his trade or business under IRC
> 1250; and or depreciated under IRC 167, 168,
> 179 and or any other applicable provision of
> the Internal Revenue code as amended, and
> or amortized under IRC 195 and or any other
> applicable provision of the Internal Revenue
> code as amended . . .

a.   § 167 (Depreciation)

Section 167(a) of the Code provides:

(a)   There shall be allowed as a depreciation
      deduction a reasonable allowance for the
      exhaustion, wear and tear (including a
      reasonable allowance for obsolescence) –

  (1)   of property used in the trade or
        business, or

  (2)   of property held for the production of
        income.

The Court will assume that Plaintiff can prove that the

Boat was, as of the end of 2006, property either used in Bowen's

trade or business or held for the production of income.  Thus,

it is assumed that the Boat could be depreciable property. However, the right to a depreciation deduction does not commence until the depreciable property is placed in service. The term "placed in service," means the time that property is first

placed by the taxpayer "in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity." 26 C.F.R. § 1.167(a)-11(e)(1)(i); see also 26 C.F.R. § 1.179-4(e).

Plaintiff has not produced evidence adequate to prove that the Boat was put in service before the end of 2006.  Indeed, it is undisputed that the Boat was unloaded in North Carolina from the freighter bringing it from China on or about December 28, 2006. The Boat was not even inspected in North Carolina until early January 2007 and was then sailed to Maryland where various remedial measures, continuing through 2009, were necessary.

Furthermore, even if there were, somehow, found to be proof that Bowen was entitled to some depreciation deduction for 2006, Plaintiff has not presented evidence adequate to prove the amount of depreciation that would be allowable for the year.[6]

---

[6] Indeed, even on the most extreme assumption - that the Boat was "in service" the minute it was unloaded from the freighter - there would be some 3 days of depreciation in 2006.

### b.   § 168 (Accelerated Cost Recovery)

Code Section 168 relates to a taxpayer's ability to accelerate the rate of depreciation of certain depreciable property.  Plaintiff does not explain how this provision enabled Bowen to have any depreciation deduction at all for the Boat in 2006.

### c.   § 1245 (Disposition Gain)

Code Section 1245 relates to the treatment of gain from dispositions of certain depreciable property.  There was no disposition of the Boat in 2006.  Plaintiff does not explain how there can be a basis for recovery under this provision.

### d.   § 1250 (Disposition of Realty)

Code Section 1250 relates to gain from dispositions of certain depreciable realty.  Plaintiff does not explain how the Boat could be considered to be "realty" in 2006 or in any year and/or even if it were realty, how there could be some basis for recovery under this provision.

### e.   § 178 (Disposition of Depreciable Property)

Code Section 178 relates to gain from dispositions of certain depreciable property.  There was no disposition of the

Boat in 2006. Plaintiff does not explain how there can be any basis for recovery under this provision.

### f.   § 179 (Expensing Depreciable Assets)

Code Section 179 relates to an election to expense the cost of certain depreciable business assets.  As discussed above, the Boat was not, in 2006, a depreciable business asset. Plaintiff does not explain how there is some basis for recovery under this provision.

### g.   § 195 (Start-Up Expenditures)

Code Section 195 relates to start-up expenditures and, in essence, allows a taxpayer to defer certain deductions. Plaintiff does not explain how this provision has any pertinence to the instant case or how it could benefit from deferring from 2006 to a later year any deductions to which Bowen may have been entitled.

### 4.   §§ 172, 174, and 163

The claim for refund states, as alternative grounds for recovery:

> the expenditures may be deducted under 172,
> 174, 163 . . .

a.   § 172 (Net Operating Loss)

Section 172(a) provides, in pertinent part:

> There shall be allowed as a deduction for
> the taxable year an amount equal to the
> aggregate of (1) the net operating loss
> carryovers to such year, plus (2) the net
> operating loss carrybacks to such year.

Generally, a net operating loss can be carried forward from

a prior year and back from a later year.  The carry forward can

be to each of the 20 years following the loss year and the

carryback can be "to each of the 2 [or 3[7]] taxable years

preceding the taxable year of such loss." § 172(b)(1)(A).

The claim for refund does not specify the taxable year or

years from which a net operating loss would be carried forward

or back to 2006.  Literally, then, the claim would include a

carry forward from any of the years 20 years before and 2 or 3

years after 2006.  Even if construed as limited to carrybacks,

the claim for refund does not specify which of the returns for

the years 2007, 2008, and/or 2009 must be examined to determine

the amount of any "carryable" net operating loss.

This alone is sufficient reason to grant summary judgment

to the Government in regard to whatever is meant by Plaintiff's

reference to § 172 in the claim for refund.

---

[7] In certain circumstances, 3 taxable years may be allowed. § 172
(b)(1)(F).

The Court notes the Government's apparently meritorious contention that a refund claim for a net operating loss deduction must be made on an amended tax return for the net operating loss year and not for the year to which the loss is to be carried.  Plaintiff did not directly address this contention but filed, in March 2012, a Form 1040-X for 2009 claiming a net operating loss carryback from 2009 to 2006.  The Government contends that this 2009 refund claim was untimely.  It suffices, for present purposes, to note that the 2009 1040-X refund claim is not part of the instant case.  If and when Plaintiff files a tax refund suit based on that claim, its validity shall be resolved in due course.

Finally, even if the claim for refund at issue should, somehow, be considered adequate to specify a claim for a net operating loss carryback to 2006 from some other year or years, Plaintiff has not presented evidence adequate to establish the amount of any net operating loss from any year that could be carried back to 2006.

b.   § 174 (Research and Experimental Deductions)

Code Section 174 relates to research and experimental expenditures and, in essence, allows a deduction for such expenditures that might otherwise be capitalized.  However, §

174(e) provides: "This section shall apply to a research or experimental expenditure only to the extent that the amount thereof is reasonable under the circumstances."

Plaintiff has not presented evidence adequate to establish that the amount paid in 2006 for the acquisition of the Boat was a reasonable expenditure for research and experimental purposes.

### c.   § 163 (Interest)

Section 163 provides for a deduction for interest paid on indebtedness.  Plaintiff does not, however, contend that Bowen paid any deductible interest in 2006 and does not explain how § 163 is pertinent to the instant case.

### 5.   "Capitalization"

The refund claim states, as another alternative:

> the expenditures may be capitalized as a
> capital asset under IRC 1221 deducted as
> expenses related to the production of income
> under IRC 212 . . .

### a.   § 1221 Capital Asset

Section 1221 states:

> (a)   In general
>
>> For purposes of this subtitle, the
>> term "capital asset" means property
>> held by the taxpayer (whether or not

16

> connected with his trade or
> business), but does not include –
>
> (1)   stock in trade of the taxpayer
>        or other property of a kind
>        which would properly be included
>        in the inventory of the taxpayer
>        if on hand at the close of the
>        taxable year, or property held
>        by the taxpayer primarily for
>        sale to customers in the
>        ordinary course of his trade or
>        business;
>
> (2)   property, used in his trade or
>        business, of a character which
>        is subject to the allowance for
>        depreciation provided in section
>        167, or real property used in
>        his trade or business;

Plaintiff does not explain how this section, applicable if the Boat were not treated as inventory or property used in Bowen's trade or business, could provide a basis for some deduction for the year 2006.


    b.   § 212 (General Deduction Provision)

Section 212 states:

> In the case of an individual, there shall be
> allowed as a deduction all the ordinary and
> necessary expenses paid or incurred during
> the taxable year –
>
> (1)   for the production or collection of
>        income;
>
> (2)   for the management, conservation, or
>        maintenance of property held for the
>        production of income; or

(3)   in connection with the determination,
      collection, or refund of any tax.

The Section does not, itself, define, increase, or decrease deductions allowable by other Code Sections.  Plaintiff does not explain how this provision would provide a ground for a tax refund.

### 6.   "Decrease in Value"

The claim for refund states as another alternative:

the decrease in value of the expenditures
may be allowed as losses under IRC 165, 166
. . .

### a.   § 165 (Casualty Loss)

Section 165 states:

There shall be allowed as a deduction any
loss sustained during the taxable year and
not compensated for by insurance or
otherwise.

As relevant hereto, § 165(h) provides a deduction for a loss from a "casualty."  To qualify as a "casualty," a loss must be "due to sudden, unexpected, or unusual events as opposed to a gradually developed result, such as one that occurs through normal operation and deterioration." Smith v. Comm'r, 608 F.2d 321, 322 (8th Cir. 1979).

Plaintiff contends that Bowen sustained a casualty loss because the Boat was damaged by waves while in transit from China to North Carolina.

It is true that damages caused by waves as alleged by Plaintiff would constitute damage caused by a casualty for § 165 purposes.  However, Plaintiff has not presented admissible evidence adequate to prove that the Boat was damaged by waves while en route to the United States.  The only "evidence" that there was casualty damage consists of out of court (hearsay) statements alleged made by boat crew members.

Moreover, even if Plaintiff were to prove that there had been a casualty, Plaintiff has not presented evidence adequate to establish the amount of damage caused by the casualty as distinct from the damage caused by defective manufacturing.

In addition, there is a timing issue.  A casualty loss is deductible only after it can be ascertained with reasonable certainty whether or not reimbursement – such as from an insurer – will be received.  26 C.F.R. § 1.165-1(d).  It is undisputed that, until 2009, Bowen was pursuing a claim for the damage occurring during shipment from an insurer.  Hence, there can be no 2006 casualty loss deduction for such damage.  See D.L. White Constr., Inc. v. Comm'r, 2010 T.C.M. 141, 2010 WL 2595080, *4

(T.C. 2010)(disallowing the loss to be deducted in 2002 when insurance proceeds were received in 2004).

Finally, a casualty loss is deductible only to the extent the loss is "not compensated for by insurance or otherwise." There is no doubt that Bowen recovered $120,000 from an insurer in settlement of his claim for damage occurring while the Boat was en route, i.e., during the time when any casualty would have occurred. Plaintiff has not presented evidence adequate to prove that any damage from a casualty exceeded $120,000.

> b. § 166 (Bad Debt)

Section 166 provides for a deduction for a debt that becomes worthless during the taxable year. Plaintiff does not explain how this provision can have any relevance to the instant case.

IV.    <u>CONCLUSION</u>

For the foregoing reasons:

     1.    The United States' Motion for Summary Judgment [Document 8] is GRANTED.

     2.    Plaintiff's Motion for Summary Judgment [Document 15] is DENIED.

     3.    Judgment shall be entered by separate Order.

SO ORDERED, on <u>Monday, July 23, 2012</u>.


                 _____/s/_____
                   Marvin J. Garbis
            United States District Judge